IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITEDHEALTH GRP. INC. & | : | |
| THE UNITEDHEALTH GRP. INC. EMPLOYEE | : | |
| HEALTH BENEFIT PLAN, | : | CIVIL ACTION |
| Plaintiffs, | : | NO. 16-1026 |
| v. | : | |
| | : | |
| MACELREE HARVEY, LTD. & ELLEN F. | : | |
| NEFF, | : | |
| Defendants. | : | |

**Jones, II      J.**                                                      **August 23, 2016**

## MEMORANDUM

UnitedHealth Group Inc. ("UHG") and UnitedHealth Group Inc. Employee Health
Benefit Plan ("the Plan") (collectively "Plaintiffs") filed a Complaint against MacElree Harvey
Ltd. ("MacElree Harvey") and Ellen F. Neff (collectively "Defendants") seeking declaratory
relief pursuant to Section 502(a)(3) of the Employee Retirement Income Security Act of 1974
("ERISA"), 29 U.S.C. § 1132(a)(3) ("Section 502(a)(3)") and the Declaratory Judgment Act, 28
U.S.C. § 2201. (Dkt No. 1. [hereinafter Compl.].) Before the Court is Defendants' Motion to
Dismiss Plaintiffs' Complaint, (Dkt No. 4), Plaintiffs' Response in Opposition to Defendants'
Motion to Dismiss, (Dkt No. 7), Defendants' Reply in Support of its Motion to Dismiss
Plaintiffs' Complaint, (Dkt No. 9), and Plaintiffs' Surreply in Opposition to Defendants' Motion
to Dismiss. (Dkt No. 12.)

After a thorough review of the Motion and the parties' respective briefs, the Court denies
the Motion.

I. **Standard of Review**

Defendants move for relief under both Federal Rule of Civil Procedure 12(b)(1) and Rule 12(b)(6). A challenge to subject matter jurisdiction under Rule 12(b)(1) may take two forms: a facial challenge or a factual challenge. If a facial challenge is made, as here, the trial court is restricted to a review of the allegations of the complaint and any documents referenced therein. *Gould Elec. Inc. v. United States*, 220 F.3d 169, 177 (3d Cir. 2000). Further, "the trial court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted). After the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("[A]ll civil complaints must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation.") (internal quotation marks omitted).

## II.     Background

Ms. Neff is an eligible participant of the Plan. (Compl. ¶ 4.) The Plan contains a

subrogation and reimbursement provision stating:

> If you or your covered Eligible Dependent(s) receive benefits under the Medical
> Plan Coverage Options that result from an event for which a third party is or may
> be liable, you and your covered Eligible Defendant(s) have certain obligations and
> the Health Plan has certain subrogation and reimbursement rights.

> By enrolling in the Medical Plan Coverage Options, you agree to...[p]ay any legal
> fees that you incur in connection with a claim or lawsuit against a third party.

> If you (or your attorney or other representative) receive any payment, however
> characterized, from the sources listed later in this section – through a judgment,
> settlement, or otherwise – when an illness or injury is a result of a third party
> action, you agree to place the funds (without reduction for attorney's fees or
> otherwise) in a separate, identifiable account and that the Health Plan has an
> equitable lien on the funds....

> The Medical Plan Coverage Options are entitled to the following subrogation and
> reimbursement rights...[t]he Health Plan has a first-priority claim for 100% of the
> benefits the Plan has paid, against any "amount" that you may recover, and has
> the right to be reimbursed first and immediately from such amounts before you
> are entitled to keep them...

> Additionally, the Health Plan is not required to participate in or contribute to any
> expenses or fees (including attorney's fees and costs) you incur in obtaining the
> funds.

(Compl., Ex. A, the Summary Plan Description, at 299-300.)

This action concerns a state court case regarding an accident suffered by Ms. Neff. On

August 1, 2013, Ms. Neff was a passenger in a car involved in an automobile accident ("the

Accident"). (Compl. ¶ 14.) The Plan paid Ms. Neff $47,268.18 for medical expenses. (Compl. ¶

15.) Ms. Neff hired Defendant MacElree Harvey, a law firm, to represent her in three cases

against third parties related to the Accident. (Compl. ¶¶ 16-18.) One, Ms. Neff pursued a case

against a third party allegedly responsible for her injuries in the Accident. (Compl. ¶ 16.) Ms.

Neff settled this case for $50,000. (Compl. ¶ 16.) Two, Ms. Neff pursued an underinsured

3

motorist claim with The Hartford Co., the insurer of the car in which Ms. Neff was a passenger. (Compl. ¶ 17.) Ms. Neff settled this case for $100,000. (Compl. ¶ 17.) Three, Ms. Neff is still pursuing an underinsured motorist claim against State Farm Insurance Company, an insurer of Ms. Neff. (Compl. ¶ 18.)

On September 17, 2015, MacElree Harvey wrote UHG a letter claiming that of the $50,000 recovered from the first case, UHG would be reimbursed the full amount it paid for Ms. Neff's medical expenses ($47,268.18), MacElree Harvey would receive $1,649.26 for attorney's fees and costs, and Ms. Neff would receive the balance. (Compl. ¶ 20.) In this letter, MacElree Harvey proposed that UHG should "consider sharing in the attorney's fees and costs," resulting in MacElree Harvey receiving $19,340.30 in attorney's fees from the $50,000 recovery of the first case. (Compl. ¶ 21.) Thus, if UHG accepted MacElree Harvey's proposal, UHG would not be fully reimbursed for the medical expenses it paid to Ms. Neff.

On October 12, 2015, UHG's recovery agent wrote MacElree Harvey a letter rejecting MacElree Harvey's request for attorney's fees and costs at any level. (Compl. ¶ 23.) The letter demanded that the Plan be reimbursed the full value of the claims it paid on Ms. Neff's behalf, without reduction for attorney's fees. (Compl. ¶ 23.) On November 4, 2015, MacElree Harvey forwarded UHG a check for the full amount of UHG's subrogation and reimbursement claim. (Compl. ¶ 24.) Along with this check, MacElree Harvey included a letter requesting that UHG reconsider its position as to payment of MacElree Harvey's attorney's fees and costs. (Compl. ¶ 24.) However, the Court emphasizes that MacElree Harvey paid UHG all sums it was owed. At this time, UHG is owed no additional sums from Ms. Neff.

On January 29, 2016, MacElree Harvey filed a complaint against UHG in the Chester County Court of Common Pleas alleging a common law claim of unjust enrichment, *MacElree*

4

*Harvey, Ltd. v. UnitedHealth Grp. Inc.*, Civ. A. No. 2016-00710-CT (Ct. Com. Pl. Chester 2016)

("the State Court Lawsuit"). (Compl., Ex. C [hereinafter State Ct. Compl.].) MacElree Harvey

alleged that it was entitled to costs and attorney's fees for services rendered to Ms. Neff in this

first third-party lawsuit under the Pennsylvania common fund doctrine. (Compl. ¶ 26.) Ms. Neff

is not a party to that lawsuit.

In response to the State Court Lawsuit, Plaintiffs filed this action. Plaintiffs allege two

counts. Under Count One, Plaintiffs argue that the Court may exercise its authority to issue

equitable relief under § 502(a)(3) because Defendants exhibited wrongful conduct by filing the

State Court Lawsuit, thereby harming the Plan. (Compl. ¶ 32.) Under Count Two, Plaintiffs

request the same declaratory judgments sought in Count One, pursuant to the Declaratory

Judgment Act. (Compl. ¶ 36.) Pending before the Court is Defendants' Motion to Dismiss. (Dkt

No. 4 [hereinafter MTD.])

## III.   Discussion

### a.   The Court denies Defendants' Motion to Dismiss Plaintiff's § 502(a)(3) claims under Federal Rule of Civil Procedure 12(b)(1), because the Court has subject matter jurisdiction pursuant to § 502(a)(3).

ERISA plans frequently pay a participant or beneficiary's medical expenses in the event

of an injury. *Montanile v. Bd. of Tr. of Nat. Elevator Indus. Health Benefit Plan*, 136 S.Ct. 651,

653 (2016). Plans also tend to include a subrogation and reimbursement clause requiring the

participants to reimburse the plans if the participants or beneficiaries later recover from third

parties. *Id.* Section 502(a)(3) authorizes plan administrators to initiate actions "to obtain

appropriate equitable relief" to enforce the terms of plans, including such subrogation and

reimbursement clauses. *U.S. Airways, Inc. v. McCutchen*, 133 S.Ct. 1537, 1544 (2013) (citing §

502(a)(3)). Section 502(a)(3) states:

> a civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision or subchapter of the terms of the plan, or (B) to obtain appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

*Id.*

"Equitable relief" under § 502(a)(3) is limited to the kinds of relief typically available in courts of equity during the time of the divided bench. *Mertens v. Hewitt Assoc.*, 508 U.S. 248, 268 (1993). "Equitable relief" under § 502(a)(3) does not mean "whatever relief a court of equity is empowered to provide in the particular case at issue," *Id.* at 256. In "many situations...an equity court could establish purely legal rights and grant legal remedies which would otherwise be beyond the scope of its authority." *Id.* (internal citations omitted). To ensure that the "modifier" of "equitable" is not rendered "superfluous," the Court must not consider "legal remedies" as "equitable relief," since such legal remedies were not "typically available in equity." *Id.* at 256, 258. In determining whether the claim is legal or equitable, the Court looks to (1) Plaintiffs' claim and (2) the nature of the remedies Plaintiff seeks. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 205 (2002).

In this case, the Court considers a plan that contains a subrogation and reimbursement clause that explicitly requires the participant to bear the full cost of attorneys' fees and costs related to third party lawsuits. The Court must answer what happens when a participant under such a policy obtains a settlement from a third party with the assistance of counsel, the participant fully reimburses the plan, but counsel sues the plan for attorney's fees under the common law equitable doctrine of the common fund doctrine.

In simplest terms, the Court must decide whether a plan fiduciary can sue under § 502(a)(3) to receive either (1) injunctive or declaratory judgment that participant's counsel

cannot recover attorney's fees from the plan from monies the plan received pursuant to a subrogation and reimbursement clause that specifically exempts attorney's fees, or (2) in the alternative, declaratory judgment that the participant indemnify the plan for any attorney's fees participant's counsel recovers from the plan. To the former, the Court queries, is it "equitable relief" when a plan administrator seeks an equitable lien against a fund already in its possession so as to prevent claims against the fund by non-parties to the Plan? To the latter, the Court asks, is it "equitable relief" when a plan administrator seeks a declaration that a participant indemnify the Plan? Construing the Complaint in the light most favorable to Plaintiffs, the Court finds that Plaintiffs are seeking equitable relief under § 502(a)(3) as to both parties for the reasons set forth below.

The Supreme Court has mapped the spectrum from legal to equitable relief. No case is directly on point with the facts before this Court. However, the parameters of precedent provide the outline for this Court's holding.

In *Knudson*, the relevant ERISA plan contained a reimbursement provision which stated that the plan administrator had a "first lien upon any recovery, whether by settlement, judgment or otherwise" that the beneficiary received from a third party, not to exceed the amounts of benefits paid by the plan. 534 U.S. at 207. The beneficiary suffered a terrible car accident, and, subsequently, agreed to a sizable settlement with the car manufacturer. *Id.* at 208-09. Through the terms of the settlement, the settlement monies were allocated to a Special Needs Trust, rather than to the beneficiary directly. *Id.* at 208. The beneficiary's attorney was supposed to reimburse the plan administrator. *Id.* at 208. The plan administrator never cashed the check it received from the beneficiary's attorney. *Id.* Instead, the plan administrator filed suit in federal court seeking injunctive and declaratory relief under § 502(a)(3) to require the beneficiaries to reimburse them

7

from the car manufacturer settlement. *Id.* The plan administrator argued that the relief sought was equitable in nature because the plan administrator was seeking to enjoin an act which violated the terms of the plan: namely, the beneficiary's attorney's failure to reimburse the plan administrator. *Id.* at 210-11.

The Supreme Court conducted an extensive review of cases and secondary legal materials to determine what equitable relief was available in the "days of the divided bench." *Id.* at 212. The Supreme Court held that seeking to impose a constructive trust or equitable lien on "particular funds or property in the defendant's possession" would constitute equitable relief. *Id.* at 213. However, the Supreme Court found that such relief was not demanded there because "the funds to which petitioners claim[ed] an entitlement" were not in Knudson's possession, but rather, in a restricted trust. *Id.* at 214. The Supreme Court held that the relief sought was "not equitable – the imposition of a constructive trust or equitable lien on particular property – but legal – the imposition of personal liability for the benefits that [Great-West] conferred upon [Knudson]." *Id.* Rather, Knudson was seeking, "in essence, to impose personal liability on respondents for a contractual obligation to pay money." *Id.* Thus, in *Knudson*, the Court drew a line in the sand between an equitable lien on particular property (equitable relief) and a declaration that a party owed monies from their general assets to fulfill a contractual obligation (legal relief).

In *Sereboff v. Mid Atlantic Medical Srvcs, Inc.*, the Supreme Court was faced with the same question as *Knudson*, but with a fact pattern in which the beneficiaries retained the monies at issue in a specific fund. 547 U.S. 356, 359 (2006). The Sereboffs suffered injuries in an automobile accident and the plan paid for their medical expenses. *Id.* at 360. The Sereboffs successfully pursued an action for damages against several third parties. *Id.* Neither the

Sereboffs, nor their counsel, reimbursed Mid Atlantic under the subrogation and reimbursement clause in the plan. *Id.* Mid Atlantic sued for reimbursement under § 502(a)(3). *Id.* at 360-61.

The Supreme Court held that the relief sought was equitable. *Id.* at 362. The Supreme Court distinguished *Sereboff* from *Knudson* on the grounds that the monies owed to Mid Atlantic were "within the possession and control of the Sereboffs," in contrast to the monies owed to *Knudson*, which were not in the possession or control of Knudson. *Id.* at 362-63. The Supreme Court explained, "[t]his Court in *Knudson* did not reject Great-West's suit out of hand because it alleged a breach of contract and sought money, but because Great-West did not seek to recover a particular fund from the defendant. Mid Atlantic does." *Id.* at 363.

The Supreme Court held that the basis of the claim was equitable because "a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing." *Id.* at 363-64 (quoting *Barnes v. Alexander*, 232 U.S. 117, 121 (1914)). Mid Atlantic was seeking relief available at the time of the divided bench; namely, the enforcement of an equitable lien established by agreement. *Id.* at 368 (citing *Barnes*, 232 U.S. at 117). Thus, *Knudson* was affirmed; the line in the sand grew deeper.

In *McCutchen*, the complicating factors of equitable defenses were added to the mix. 133 S.Ct. at 1537. In *McCutchen*, the relevant ERISA plan required that U.S. Airways pay McCutchen any medical expenses McCutchen incurred as a result of a third party's actions. *Id.* at 1542. The plan in turn entitled U.S. Airways to reimbursement if McCutchen later recovered money from a third party. *Id.* The plan contained no explicit reference to attorney's fees. Mirroring the tragic narrative of all of these cases, McCutchen was seriously injured in a car accident. *Id.* at 1543. U.S. Airways paid for McCutchen's medical expenses. *Id.* McCutchen hired counsel on a contingency basis and successfully sued both the driver responsible for the

crash and his own automobile insurer. *Id.* Upon learning of these recoveries, U.S. Airways demanded reimbursement. *Id.* McCutchen, who personally controlled the settlement fund, refused to reimburse U.S. Airways. *Id.* at 1543-44. McCutchen argued that the doctrine of double recovery prevented U.S. Airways' recovery, and in the alternative, argued that any reimbursement would need to be reduced by the amount of attorney's fees owed to his counsel pursuant to the "common fund doctrine." *Id.* The Supreme Court noted that both of these theories derived from principles of unjust enrichment. *Id.* at 1545 n. 4 (internal citations omitted).

The Supreme Court held that U.S. Airways was seeking equitable relief as it was "seeking to enforce the modern-day equivalent of an 'equitable lien by agreement.'" *Id.* at 1546. As the Court explained:

> And that kind of lien—as its name announces—both arises from and serves to carry out a contract's provisions....So enforcing the lien means holding the parties to their mutual promises...Conversely, it means declining to apply rules—even if they would be "equitable" in a contract's absence—at odds with the parties' expressed commitments. McCutchen therefore cannot rely on theories of unjust enrichment to defeat U.S. Airways' appeal to the plan's clear terms. Those principles, as we said in *Sereboff*, are "beside the point" when parties demand what they bargained for in a valid agreement.

*Id.* at 1546-47 (internal citations omitted).

Having determined that U.S. Airways was properly seeking an equitable lien by agreement, the Court then addressed whether state common law unjust enrichment doctrines could override the plan. Pursuant to principles of contract law, the Supreme Court held that, in fact, an unambiguous plan overrides any unjust enrichment doctrines:

> But if the agreement governs, the agreement governs: The reasons...for looking to the contract's terms do not permit an attorney's-fees exception. We have no doubt that the common-fund doctrine has deep roots in equity....Those roots, however, are set in the soil of unjust enrichment...And as we have just explained, principles of unjust enrichment give way when a court enforces an equitable lien by agreement. The agreement itself becomes the measure of the parties' equities; so if a contract abrogates the common-fund doctrine, the insurer is not unjustly enriched by claiming the benefit of its bargain...Even in equity, when a party sought to enforce a lien by agreement, all provisions of that agreement controlled.

*Id.* at 1547-48.

In the specific factual context of *McCutchen*, the Supreme Court held that the plan was "silent on the allocation of attorney's fees," *Id.* at 1548, saying "nothing specific" about the issue. *Id.* at 1549. As such, the Supreme Court found that the plan was ambiguous as to whether the plan's reimbursement provision allowed for attorney's fees. *Id.* Given the ambiguity, the Supreme Court looked to "background legal rules," "doctrines that typically or traditionally have governed a given situation when no agreement states otherwise," like the common-fund doctrine. *Id.* at 1549 (citing *Wal-Mart Stores, Inc. Assoc. Health & Welfare Plan v. Wells*, 213 F.3d 398, 402 (7th Cir. 2000)). The Court concluded that where a plan is ambiguous on the payment of attorney's fees in the context of a reimbursement provision, "the common-fund doctrine provides the appropriate default." *Id.* at 1548. Thus, where an agreement is explicit about attorney's fees, then the agreement controls over any equitable doctrines, including the common fund doctrine.

In *Montanile*, Montanile was severely injured by a drunk driver. 136 S.Ct. at 655. The relevant facts played out in three acts. One, Montanile received monies from his ERISA plan, National Elevator, to cover his medical expenses. *Id.* at 655-66. Two, Montanile recovered from a suit against the drunk driver and his insurer. *Id.* Three, Montanile spent the whole recovery on nontraceable items. *Id.* National Elevator initiated a case under § 502(a)(3) seeking to enforce the plan's subrogation and reimbursement clause. *Id.* at 655. The Supreme Court held that the plan was seeking a legal, not equitable, remedy. *Id.* at 658-59. "[A]t equity, a plaintiff ordinarily could not enforce any type of equitable lien if the defendant once possessed a separate, identifiable fund to which the lien attached, but then dissipated it all. The plaintiff could not attach a defendant's general assets instead because those assets were not part of the specific thing to which the lien attached." *Id.* at 659. Thus, equitable liens cannot be enforced against a

defendant's general assets, but rather, must be enforced against a specifically identified fund in the defendant's possession. *Id.* at 659-60 (citing 1 Dobbs, Remedies 2d Ed. § 4.3(3)). The Supreme Court remanded for a factual determination of whether Montanile kept his settlement fund separate from his general assets. *Id.* at 662. Thus, restitution in equity typically involves "a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Montanile*, 136 S.Ct. 657 (quoting *Knudson*, 122 S.Ct. at 708).

To demonstrate the parameters, and limitations, of the application of such precedent to this case, the Court considers the facts of this case and the implications of the Court's decision on such fact. The Court begins with the facts of this case. The Plan paid Ms. Neff $47,268.18 for her medical expenses. With the assistance of MacElree Harvey, Ms. Neff recovered from two third party suits, with a third suit pending. The Plan contains a subrogation and reimbursement clause that explicitly excludes attorney's fees and costs.

The Court considers: what would happen if the Court grants Defendants' Motion to Dismiss and MacElree Harvey prevails in the state court suit? Under this factual scenario, Plaintiffs would have three main options to recover the monies owed to them under the subrogation and reimbursement clause. First, assuming that Ms. Neff still controls the remainder of her settlement recoveries, pursuant to *Sereboff*, the Plan could sue Ms. Neff under § 502(a)(3) for an equitable lien over the settlement recoveries because such monies are in the possession of Ms. Neff. Further, pursuant to *McCutchen*, because the Plan was explicit about attorney's fees, the amount of reimbursement could not be diminished by any recovery for MacElree Harvey.

Second, assuming Ms. Neff had at that point already dissipated the settlement recoveries, then, pursuant to *Montanile*, the Plan could seek legal redress against Ms. Neff for breach of

contract.

Third, the Plan could sue MacElree Harvey under § 502(a)(3) for an equitable lien over the settlement fund it had literally just recovered from Plaintiffs in the state court suit. Two legal conclusions explain this option. First, based on a deferential reading of the Complaint, the settlement fund monies are currently traceable as a specific fund in Plaintiffs' control. Generally, plan assets are traceable to specific funds because benefit plan assets must be held in trust under 29 U.S.C. § 1103, barring some exceptions under § 1103(b). *See, e.g.*, *Pell v. E.I. DuPont de Nemours & Co. Inc.*, 539 F.3d 292, 305-08 (3d Cir. 2008); *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 214 n. 28 (3d Cir. 2004). Thus, the settlement reimbursement is a specific fund that would be transferred from Plaintiffs to MacElree Harvey. MacElree Harvey would then control the settlement fund.

Second, a plan administrator can pursue equitable relief under § 502(a)(3) against a third party that controls a settlement fund from a participant or beneficiary. In *Harris Tr. and Sav. Bank v. Saloman Smith Barney, Inc.*, the Supreme Court held that "§502(a)(3) admits of no limit...on the universe of possible defendants. Indeed § 502(a)(3) makes no mention at all of which parties may be proper defendants." 530 U.S. 238, 246 (2000). In *Knudson*, the Supreme Court stated that it did not need to decide "whether [the plan] could have obtained equitable relief against...the trustee of the Special Needs Trust." 534 U.S. at 220. However, in her dissent, Justice Ginsburg observed that the majority's opinion "surely contemplates that a constructive trust claim would lie...if [the plan] had sued the trustee of the Special Needs Trust, who has 'possession' of the requested funds, instead of the [beneficiary], who do[es] not." *Id.* at 225 (Ginsburg, J., dissenting).

The Fifth, Sixth, Eighth, Tenth and Eleventh Circuits have considered whether a plan

may sue a third-party, non-party to a plan, under § 502(a)(3). Applying the lesson of *Harris Trust*, all have affirmed Justice Ginsburg's *Knudson* pronouncement.

In *Admin. Comm. for Wal-Mart Stores, Inc. Asscss' Health & Welfare Plan v. Willard*, Willard's ERISA plan paid his medical expenses following a pharmaceutical accident. 393 F.3d 1119, 1120 (10th Cir. 2004). The plan had a subrogation and reimbursement clause. *Id.* at 1122. Following recovery of a third-party settlement, Willard agreed to have the settlement fund placed in the Court's registry. *Id.* at 1124-25. The Tenth Circuit held that the Administrative Committee was seeking equitable relief because "although Mr. Willard is not in physical possession of the settlement proceeds, he did exercise control over the funds and can be deemed to be in constructive possession of the funds." *Id.* at 1125.

In *Admin. Comm. for Wal-Mart Stores, Inc. Asscs' Health & Welfare Plan v. Shank*, Shank's ERISA plan paid for her medical expenses for her severe injuries following a car accident. 500 F.3d 834, 835 (8th Cir. 2007). The plan had a subrogation and reimbursement clause. *Id.* at 835-36. Shank settled for a recovery with a third party and placed a portion of the funds in a special needs trust. *Id.* at 836. The Eighth Circuit held that the Administrative Committee was appropriately pursuing equitable relief under § 502(a)(3) in seeking the enforcement of equitable restitution against the special needs trust's trustee. *Id.* at 836-37.

In *Admin. Comm. for Wal-Mart Stores, Inc. Asscs' Health & Welfare Plan v. Horton*, Horton, a covered party under his mother's ERISA plan, was injured in an accident. 513 F.3d 1223, 1224 (11th Cir. 2008). The Administrative Committee paid Horton's medical expenses. *Id.* Horton settled a claim against a third-party driver. *Id.* A sizable portion of the settlement was placed in a trust account at Regions Bank, with Horton's mother, as conservator. *Id.* The plan had a subrogation and reimbursement clause. *Id.* at 1225. The Administrative Committee sued

Regions' Bank and Horton's mother in her capacity as conservator for reimbursement under the subrogation clause in the plan. *Id.* The Eleventh Circuit held that "the most important consideration is not the identity of the defendant, but rather that the settlement proceeds are still intact, and thus constitute an identifiable *res* that can be restored to its rightful recipient." *Id.* at 1229. Citing to the Restatement of Restitution, the Eleventh Circuit explained:

> Where property is held by one person upon a constructive trust for another, and the former transfers the property to a third person who is not a bona fide purchaser, the interest of the beneficiary is not cut off. In such a case, he can maintain a suit in equity to recover the property from the third person, at least if his remedies at law are not adequate.

*Id.* at 1228 (quoting RESTATEMENT OF RESTITUTION § 160 cmt. g (1937)). Because the Administrative Committee was seeking "a specifically identifiable fund in possession of a defendant," it did not matter that the defendant was a third party to the settlement. *Id.* at 1228-29.

In *Longaberger Co. v. Kolt*, the relevant plan paid the medical bills of a dependent of a Longaberger employee after a serious car accident. 586 F.3d 459, 462 (6th Cir. 2009) (abrogated on other grounds by *Montanile*, 136 S.Ct. at 651). The plan contained a subrogation and reimbursement clause. *Id.* at 462-63. The dependent received a third-party settlement. *Id.* at 462. The dependent's attorney, Kolt, disbursed part of the settlement fund to himself for attorney's fees. *Id.* Longaberger sued Kolt under § 502(a)(3); Kolt argued that *Sereboff* did not apply to him because he was not a plan fiduciary or beneficiary. *Id.* at 467-68. The Sixth Circuit disagreed and held that Longaberger could seek an equitable lien against the settlement fund monies held in Kolt's possession. *Id.* at 468-69. "[T]here is no statutory barrier that prevents Kolt from being a defendant in a suit brought pursuant to § 502(a)(3) of ERISA, provided that the relief sought lies in equity." *Id.* at 468 (citing *Harris Trust*, 530 U.S. at 246).

In *ACS Recovery Servs., Inc. v. Griffin*, Griffin's ERISA plan paid his medical expenses following an automobile accident. 723 F.3d 518, 521 (5th Cir. 2013). The plan contained a

subrogation provision. *Id.* Griffin recovered a settlement from a third party that was placed into a special needs trust. *Id.* The Fifth Circuit held that § 502(a)(3) permitted the plan to sue the special needs trust and its trustee for the imposition of a constructive trust on the proceeds of the annuity as they accrue to the special needs trust. *Id.* at 528. "[I]n [*Knudson*]...Justice Ginsburg implied that the trust's possession of the identifiable settlement fund could render it liable. There is nothing inconsistent in maintaining special needs trusts but also insisting they not be funded with proceeds transferred in violation of a beneficiary's duty to satisfy an equitable lien by agreement with his ERISA plan." *Id.* at 530.

Defendants ask the Court to consider an outlier to this case law: *Primax Recoveries, Inc. v. Sevilla*, 324 F.3d 544 (7th Cir. 2003). In *Sevilla*, a car accident victim covered by an ERISA plan reached a settlement with a third party about the accident. *Id.* at 546. The victim's counsel deducted attorney's fees from the settlement fund. *Id.* The deduction of attorney's fees meant that the plan did not recover the full amount of expense reimbursement it was due. *Id.* The plan brought a federal suit under ERISA to recover the amount deducted by the lawyer. *Id.* The Seventh Circuit found that "the fact that the ERISA plan may have rejected the common fund doctrine is irrelevant, since the lawyer whose claim to restitution is at stake was not a party to the plan and so is not bound by limitations in it of his legal rights." *Id.* at 549. The Court does not find this case persuasive. First, it was decided before the Supreme Court's rulings in *Sereboff* and *McCutchen*. Second, the Seventh Circuit itself cabined the holding in *Sevilla* to its unique facts. In a subsequent case, *Admin. Comm. of Wal-Mart Stores, Inc. Asscs' Health & Welfare Plan v. Varco*, the Seventh Circuit explained that a plan could pursue equitable relief to enforce a constructive trust against funds held in a reserve bank account. 338 F.3d 680, 687 (7th Cir. 2003). The Seventh Circuit held that the funds were "in the control of a Plan participant due to

the fact that [the beneficiary's attorney] placed them in a reserve account in [the beneficiary's] name." *Id.* Further, the Seventh Circuit explained that in *Sevilla*, it had "not had the opportunity to rule, either as a matter of state or federal common law, that the common fund doctrine defeats the terms of an ERISA plan that expressly requires participants to pay their own legal fees." *Id.* at 680. Now having such opportunity, the Seventh Circuit ruled that an ERISA plan that explicitly disclaimed liability for payment of attorneys' fees trumped the common fund doctrine. *Id.*

Following the strong weight of precedent, the Court finds that if MacElree Harvey recovers from the settlement fund reimbursement in Plaintiffs' possession, Plaintiffs could then sue MacElree Harvey for that same reimbursement under § 502(a)(3). Thus, if the Court dismisses this case, an endless back-and-forth could ensue. While Plaintiffs control the settlement fund, MacElree Harvey could sue them under the common fund doctrine. When MacElree Harvey then controls the settlement fund, Plaintiffs could sue them right back under § 502(a)(3). Plaintiffs and MacElree Harvey could sue each other for the same settlement fund in perpetuity. This would be an absurd result. However, of course, avoidance of absurdity is not reason alone to find that Plaintiffs are pursuing equitable relief allowable under § 502(a)(3).

In conclusion, if Ms. Neff controlled the settlement fund, Plaintiffs could seek a constructive trust to enforce an equitable lien over the fund. If the settlement fund was placed in a court registry or in escrow, Plaintiffs could seek a constructive trust to enforce an equitable lien over the fund. If MacElree Harvey controlled the settlement fund, Plaintiffs could seek a constructive trust to enforce an equitable lien over the fund. Thus, in this case, what is the practical difference that the settlement fund is in the possession of the plan administrator?

To answer this question, Plaintiffs encourage the Court to review cases where courts

found subject matter jurisdiction under § 502(a)(1)(B) when participants sued plans for benefits already received. Pursuant to § 502(a)(1)(B), "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Plaintiffs argue that since courts have found that a participant is seeking to "recover benefits," even when he has already received said benefits, then a plan administrator is seeking equitable relief when it seeks a constructive trust over a settlement fund it has already received.

In *Arana v. Ochsner Health Plan*, the relevant plan paid Arana's medical expenses following a car accident. 338 F.3d 433, 435 (5th Cir. 2003). The plan had a subrogation and reimbursement clause. *Id.* Arana sued for declaratory judgment in state court seeking to bar OHP from asserting its rights under the subrogation and reimbursement clause. *Id.* at 435-36. OHP removed to federal court. *Id.* at 438. Arana argued that the federal court did not have subject matter jurisdiction because OHP had already paid for his medical expenses, and thus, he was not seeking to "recover benefits" under § 502(a)(1)(B). *Id.* at 436. The Fifth Circuit held that there was subject matter jurisdiction under § 502(a)(1)(B) because:

> [a]s it stands, Arana's benefits are under something of a cloud, for OHP is asserting a right to be reimbursed for the benefits it has paid for his account. It could be said, then, that although the benefits have already been paid, Arana has not fully 'recovered' them because he has not obtained the benefits free and clear of OHP's claims.

*Id.* at 438. Similarly, in *Singh v. Prudential Health Care Plan, Inc.*, Singh instituted a state court action seeking reimbursement of monies paid to Prudential pursuant to a subrogation and reimbursement clause in the ERISA plan. 335 F.3d 278, 280 (4th Cir. 2003). Even though Prudential had already paid for Singh's medical benefits, the Fourth Circuit found that Singh's claims were for benefits due "[b]ecause Singh's claims seek to enforce a term of the Prudential plan, as so modified by State law, they are within the scope of § 502(a) and must be adjudicated

as federal claims under that section." *Id.* at 293. Finally, in this Circuit, in *Levine v. United Healthcare Corp.*, insured sued their ERISA providers in state court to recover the amounts they had repaid the providers under subrogation and reimbursement provisions. 402 F.3d 156, 160 (3d Cir. 2005). Relying on *Arana* and *Singh*, the Third Circuit held that "[w]here, as here, plaintiffs claim that their ERISA plan wrongfully sought reimbursement of previously paid health benefits, the claim is for 'benefits due' and federal jurisdiction under section 502(a) of ERISA is appropriate." *Id.* at 163.

However, § 502(a)(1)(B) does not require that the relief sought sound in traditional notions of equity. The equity versus legal analysis does not apply to § 502(a)(1)(B). The Court does find instructive the common sense principle that so long as a party retains a legal claim over a fund, the physical holder of the fund does not own that money "free and clear." *See Arana*, 338 F.3d at 438.

Thus, the Court has established that denying the Motion would lead to an absurd result and that common sense principles support Plaintiffs' requested relief. However, the Court's decision must rest on whether or not Plaintiffs are requesting legal or equitable relief. The Court thus reviews traditional notions of equity:

> A lien is a charge against property that makes the property stand as security for a debt owed...[T]he property subject to his lien is in effect set aside for the satisfaction of his claim first. Only after his claim is satisfied will the property or its proceeds become available for payment of other creditors. A lien is thus not merely a matter between the lien creditor and his debtor; it is a matter affecting other creditors as well, because it withdraws some of the debtor's resources that ordinarily would be available for satisfaction of the claims of those other creditors.

1 Dan B. Dobbs, *Law of Remedies* § 4.3(3), at 600 (2d ed. 1993). An equitable lien by agreement "may be used to give one creditor a preference over others, on the basis of a simple agreement between creditor and debtor, and without notice to other creditors." *Id.* § 4.3(3) at 601. Equitable liens are similar to constructive trusts in that "neither remedy can be used unless some particular

19

assets can be identified as belonging in good conscience to the plaintiff, and in the rule that

permits any identified or traced assets, tangible or intangible, to qualify as particular assets." *Id.*

§ 4.3(3) at 603. Constructive trusts are only used where "an asset that can be identified as

belonging in god conscience to the plaintiff in spite of the defendant's legal right to it." *Id.* §

4.3(2) at 591. However, the defendant cannot be a constructive trustee "when he no longer has an

asset belonging in equity to the plaintiff...In that case they are only debtors and the plaintiff is

only an unsecured creditor." *Id.* § 4.3(2) at 592.

MacElree Harvey does not hold the settlement fund; Plaintiffs do. However, MacElree

Harvey retains its legal claim to the settlement fund under the common fund doctrine. "[T]he

Supreme Court has consistently recognized 'that a litigant or a lawyer who recovers a common

fund for the benefit of persons other than himself or his client is entitled to a reasonable

attorney's fee from the fund as a whole.'" *Brytus v. Sprang & Co.*, 203 F.3d 238, 242 (3d Cir.

2000) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

The Court holds that MacElree Harvey remains a constructive trustee over the settlement

fund due to their common fund claim, even though Plaintiffs physically retain control over the

fund. MacElree Harvey has a legal claim over the settlement fund under the common fund

doctrine. Conceptually, MacElree Harvey is the legal owner of its future recovery of the

settlement fund under the common fund doctrine.

While MacElree Harvey has a legal claim under the common fund doctrine, Plaintiffs

argue in their Complaint that they have the superior equitable claim under the explicit language

of the Plan. Thus, the relief that Plaintiffs are seeking is equitable insofar as they are seeking to

enforce their equitable lien over MacElree Harvey's future recovery of the settlement fund from

its common fund claim. Construing the facts in the light most favorable to Plaintiffs, Plaintiffs

can enforce an equitable lien over Ms. Neff's settlement fund against MacElree Harvey's future recovery of the settlement fund, even though the settlement fund is currently in the physical possession of Plaintiffs. The fact that MacElree Harvey's recovery of the settlement fund is in the future is of no import. "[T]he fund over which a lien is asserted need not be in existence when the contract containing the lien provision is executed." *Sereboff*, 547 U.S. at 366. MacElree Harvey's future recovery makes it a constructive trustee over a traceable fund: the settlement fund currently in Plaintiffs' possession. Plaintiffs are seeking equitable relief against MacElree Harvey. To hold otherwise would be to allow MacElree Harvey to recover from a settlement fund that Plaintiffs could then recover right back. Moreover, to hold otherwise would be to negate the equitable lien that Plaintiffs have over the settlement fund.

Further, based on a generous reading of the Complaint, it appears that Ms. Neff still controls a portion of the settlement fund. Thus, Plaintiffs are seeking equitable relief under § 502(a)(3) against Ms. Neff to the extent that they are seeking a constructive trust against the traceable settlement fund in her possession. Further facts may bear out that she has dissipated such funds, but that is not to be decided at this stage. Therefore, the Court denies Defendants' Motion to Dismiss Count One on Rule 12(b)(1) grounds.[1]

Finally, because the Court has found that it has subject matter jurisdiction over these claims, the Court will deny Defendants' Motion to dismiss Plaintiffs' Declaratory Judgment Act claims.

### b.  The Court denies Defendants' Motion to Dismiss on Rule 12(b)(6) grounds.

---

[1] Because the Court finds that it has independent subject-matter jurisdiction pursuant to § 502(a)(3), the Court finds that the Well-Pleaded Complaint Rule does not apply. As noted above, the Court does not find the holding in *Primax Recoveries, Inc. v. Sevilla* to be persuasive on this point as it was decided prior to *Sereboff* and *McCutchen* and stands as an outlier on this issue compared to other circuits.

As addressed above in the Court's 12(b)(1) hypothetical, as a matter of law, pursuant to *McCutchen*, where a plan is explicit about the non-payment of attorney's fees from a settlement fund, the plan supersedes any equitable doctrine affording attorney's fees from a settlement fund, including the common fund doctrine. As our review of equitable doctrine taught, an equitable lien does not just affect the "debtor" (here, Ms. Neff), and the "creditor" (here, Plaintiffs) but, also, all other erstwhile "creditors" (here, MacElree Harvey). ERISA provides no limitation to who may be considered a defendant under § 502(a)(3). Following the strong weight of implication from the Supreme Court and persuasive authority from sister circuits, the Court finds that a plan can seek equitable relief under § 502(a)(3) to enforce an equitable lien against such "creditors." Thus, viewing the Complaint in the light most favorable to Plaintiffs at this stage, MacElree Harvey's common fund claim can be subrogated to the explicit language in the Plan and the Plan can sue MacElree Harvey for the equitable remedy of enforcing its equitable lien against a settlement fund to which MacElree Harvey retains a legal right. Therefore, MacElree Harvey is an appropriate defendant in this suit.[2] Further, construing the Complaint in the light most favorable to Plaintiffs, the Court finds that Ms. Neff has not dissipated the remaining settlement funds. Thus, Plaintiffs can pursue an equitable lien against Ms. Neff. Plaintiffs survive the pleading standard requirements of Rule 12(b)(6).

---

[2] Of note, the Court finds that *Central States, Southeast and Southwest Areas Health & Welfare Fund v. Bollinger, Inc.*, 2013 WL 4502083 (D.N.J. 2013), affirmed 573 F. App'x 197 (3d. Cir. 2014), is wholly inapplicable. In *Bollinger*, the plan was seeking to enforce an equitable lien that the court found had no basis in the plan. 2013 WL 4502083, at *4. The court explained that in contrast, in *McCutchen*, the equitable lien sprang from the governing ERISA plan document. *Id.* The court explained that "the applicable plan was found to give the fiduciary a claim of entitlement to payments that were received by the beneficiary from a third party, in other words, a lien by agreement." *Id.* In this case, the Plan is explicit in its subrogation and reimbursement clause that attorney's fees are excluded. As such, the Plan creates an equitable lien over any settlement fund recovery to the exclusion of any attorney's fees claims. Under the historic principle of equitable liens, this lien is enforceable not just against Ms. Neff but against any other creditor who would seek to obtain attorney's fees, like MacElree Harvey. Thus, unlike in *Bollinger*, here, the equitable lien sought is clearly rooted in the explicit language of the Plan.

Finally, the relief requested does not violate the Anti-Injunction Act. Under the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. As an overarching matter, Plaintiffs have not requested that the Court say the state court proceedings. Moreover, even if the requested relief could be so interpreted, because the Court has found that it has subject matter jurisdiction pursuant to § 502(a)(3), the injunction is necessary to aid the court's jurisdiction so the Act does not apply. *See Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988).

**IV.    Conclusion**

The Court has subject matter jurisdiction over Plaintiffs' § 502(a)(3) claim since Plaintiffs seek equitable rather than legal relief. The Court denies Defendants' Motion to Dismiss.